1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   JEFFREY WILDE,                              No. 2:16-CV-0952-JAM-CMK

12              Plaintiff,

13        vs.                                    <u>FINDINGS AND RECOMMENDATIONS</u>

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                Defendant.
16
     _____/
17

18              Plaintiff, who is proceeding with retained counsel, brings this action under

19   42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security.

20   Pending before the court are plaintiff's motion for summary judgment (Doc. 15) and defendant's

21   cross-motion for summary judgment (Doc. 20).

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

                                                  1

# I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on February 29, 2012. In the application, plaintiff claims that disability began on December 28, 2010. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on February 27, 2014, before Administrative Law Judge ("ALJ") Carol A. Eckersen. In an August 4, 2014, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

> 1. The claimant has the following severe impairment(s): ischemic heart disease, chronic obstructive pulmonary disease, mild hip osteoarthritis, lumbar degenerative disc disease, diabetes mellitus, and obesity;
>
> 2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;
>
> 3. The claimant has the following residual functional capacity: the claimant can perform sedentary work; he can occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl; he can frequently balance; he should never climb ladders and he should avoid concentrated exposure to cold, heat, wetness and humidity, noise, vibration, fumes, odors, and hazards; the claimant should have a sit/stand option to change position at the workstation twice per hour and take normal breaks; and
>
> 4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, the claimant can perform his past relevant work as a data entry clerk and a telephone technician.

After the Appeals Council declined review on March 17, 2016, this appeal followed.


# II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole,

including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III.  DISCUSSION

In his motion for summary judgment, plaintiff argues: (1) the ALJ erred in rejecting his testimony and statements as not credible; and (2) the ALJ failed to correctly identify plaintiff's past relevant work.

### A.    Credibility Finding

The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit credibility finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony.  See id.  Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not

credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

Regarding reliance on a claimant's daily activities to find testimony of disabling pain not credible, the Social Security Act does not require that disability claimants be utterly incapacitated. See Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989). The Ninth Circuit has repeatedly held that the "... mere fact that a plaintiff has carried out certain daily activities ... does not ...[necessarily] detract from her credibility as to her overall disability." See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Vertigan v. Heller, 260 F.3d 1044, 1050 (9th Cir. 2001)); see also Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986) (observing that a claim of pain-induced disability is not necessarily gainsaid by a capacity to engage in periodic restricted travel); Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (concluding that the claimant was entitled to benefits based on constant leg and back pain despite the claimant's ability to cook meals and wash dishes); Fair, 885 F.2d at 603 (observing that "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication"). Daily activities must be such that they show that the claimant is "...able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Fair, 885 F.2d at 603. The ALJ must make specific findings in this regard before relying on daily activities to find a claimant's pain testimony not credible. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005).

As to plaintiff's credibility, the ALJ stated:

The credibility of the claimant's allegations regarding the severity of his symptoms and limitations is diminished because those allegations are greater than expected in light of the objective evidence of record. The positive objective clinical and diagnostic findings since the alleged onset date detailed above do not support more restrictive functional limitations than those assessed herein. Specifically, the claimant continues to have chest pain for which he takes Nitroglycerin weekly. He gets shortness of breach and coughing, which is related to his COPD. Despite these symptoms, he is able to take care of his own personal hygiene and keep track of his own medications. He takes a long time to fall asleep but sleeps for 10-12 hours a night and feels rested when he wakes up. He can heat food in the microwave but only cleans a pan when he needs to use it again. He cleans the bathroom but not much else because it is not

5

comfortable to squat or reach due to back pain. He could grocery shop, attends church twice a week for one hour each time, and does not have difficulty getting along with others. He takes his dog to the park to let him play every 2 weeks. He can sit for one hour, stand or walk for 30 minutes with breaks, and can lift 6 pounds.

Finally, as mentioned earlier, the record reflects work activity after the alleged onset date. Although that work activity did not constitute disqualifying substantial gainful activity, it does indicate that the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported.

Plaintiff argues that the ALJ's analysis is legally insufficient because the ALJ does not state which specific portions of plaintiff's testimony are undermined by the referenced portions of the medical record. The court agrees. As stated above, general findings are insufficient and the ALJ must identify what testimony is not credible and what evidence undermines the testimony. See Lester, 81 F.3d at 834; see also Garrison v. Colvin, 759 F.3d 995 (9th Cir. 2014); Treichler v. Commissioner, 775 F.3d 1090 (9th Cir. 2014); Brown-Hunter v. Colvin, 806 F.3d 487 (9th Cir. 2015). In this case, the court has carefully reviewed the ALJ's hearing decision and cannot find any references to plaintiff's specific allegations or symptoms. Because the ALJ failed to identify plaintiff's specific allegations, the court cannot say that the ALJ's discussion of plaintiff's credibility linked to any finding that any particular statement is not credible. The court is left to guess which of plaintiff's symptoms allegations are undermined by the evidence discussed by the ALJ.

The matter should be remanded for a new credibility finding.

## B.     Vocational Finding

Defendant concedes that the ALJ erred in concluding that plaintiff could perform his past relevant work as a data entry clerk and a telephone technician because the vocational expert testified that a person with the residual functional capacity found by the ALJ could not do such work. Defendant, however, argues that the error is harmless because "there was substantial evidence in the record of other work Plaintiff could perform. . . ." In particular, defendant contends that the vocational expert testified that a hypothetical person with plaintiff's residual

6

functional capacity could perform the job of procurement clerk.

The Ninth Circuit has applied harmless error analysis in social security cases in a number of contexts. For example, in Stout v. Commissioner of Social Security, 454 F.3d 1050 (9th Cir. 2006), the court stated that the ALJ's failure to consider uncontradicted lay witness testimony could only be considered harmless ". . . if no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Id. at 1056; see also Robbins v. Social Security Administration, 466 F.3d 880, 885 (9th Cir. 2006) (citing Stout, 454 F.3d at 1056). Similarly, in Batson v. Commissioner of Social Security, 359 F.3d 1190 (9th Cir. 2004), the court applied harmless error analysis to the ALJ's failure to properly credit the claimant's testimony. Specifically, the court held:

> However, in light of all the other reasons given by the ALJ for Batson's lack of credibility and his residual functional capacity, and in light of the objective medical evidence on which the ALJ relied there was substantial evidence supporting the ALJ's decision. Any error the ALJ may have committed in assuming that Batson was sitting while watching television, to the extent that this bore on an assessment of ability to work, was in our view harmless and does not negate the validity of the ALJ's ultimate conclusion that Batson's testimony was not credible.

> Id. at 1197 (citing Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990)).

In Curry, the Ninth Circuit applied the harmless error rule to the ALJ's error with respect to the claimant's age and education. The Ninth Circuit also considered harmless error in the context of the ALJ's failure to provide legally sufficient reasons supported by the record for rejecting a medical opinion. See Widmark v. Barnhart, 454 F.3d 1063, 1069 n.4 (9th Cir. 2006).

The harmless error standard was applied in Carmickle v. Commissioner, 533 F.3d 1155 (9th Cir. 2008), to the ALJ's analysis of a claimant's credibility. Citing Batson, the court stated: "Because we conclude that . . . the ALJ's reasons supporting his adverse credibility finding are invalid, we must determine whether the ALJ's reliance on such reasons was harmless error." See id. at 1162. The court articulated the difference between harmless error standards set

/ / /

forth in <u>Stout</u> and <u>Batson</u> as follows:

> . . . [T]he relevant inquiry [under the <u>Batson</u> standard] is not whether the ALJ would have made a different decision absent any error. . . it is whether the ALJ's decision remains legally valid, despite such error. In <u>Batson</u>, we concluded that the ALJ erred in relying on one of several reasons in support of an adverse credibility determination, but that such error did not affect the ALJ's decision, and therefore was harmless, because the ALJ's remaining reasons *and ultimate credibility determination* were adequately supported by substantial evidence in the record. We never considered what the ALJ would do if directed to reassess credibility on remand – we focused on whether the error impacted the *validity* of the ALJ's decision. Likewise, in <u>Stout</u>, after surveying our precedent applying harmless error on social security cases, we concluded that "in each case, the ALJ's error . . . was inconsequential to the *ultimate nondisability determination*."
>
> Our specific holding in <u>Stout</u> does require the court to consider whether the ALJ would have made a different decision, but significantly, in that case the ALJ failed to provide *any reasons* for rejecting the evidence at issue. There was simply nothing in the record for the court to review to determine whether the ALJ's decision was adequately supported.
>
> <u>Carmickle</u>, 533 F.3d at 1162-63 (emphasis in original; citations omitted).

Thus, where the ALJ errs in not providing any reasons supporting a particular determination (i.e., by failing to consider lay witness testimony), the <u>Stout</u> standard applies and the error is harmless if no reasonable ALJ could have reached a different conclusion had the error not occurred. Otherwise, where the ALJ provides analysis but some part of that analysis is flawed (i.e., some but not all of the reasons given for rejecting a claimant's credibility are either legally insufficient or unsupported by the record), the <u>Batson</u> standard applies and any error is harmless if it is inconsequential to the ultimate decision because the ALJ's disability determination nonetheless remains valid.

The court cannot say that the ALJ's vocational error was harmless. As discussed above, the ALJ's credibility finding was not based on proper legal analysis. Absent this error, it is possible that the ALJ would have made a different residual functional capacity assessment which, in turn, would affect the vocational expert's testimony that plaintiff could perform the job of procurement clerk. Applying the <u>Stout</u> standard, it is impossible to determine whether no

reasonable ALJ could have reached a different conclusion had the vocational error not occurred because the credibility error infected the vocational expert's testimony. Similarly, applying the Batson standard, the credibility error makes it impossible to determine whether the vocational error is inconsequential to the ultimate determination, again because the vocational expert's testimony may have been undermined by a proper credibility analysis.

## IV. CONCLUSION

For the foregoing reasons, this matter should be remanded under sentence four of 42 U.S.C. § 405(g) for further development of the record and/or further findings addressing the deficiencies noted above. Accordingly, the undersigned recommends that:

1. Plaintiff's motion for summary judgment (Doc. 15) be granted;

2. Defendant's cross motion for summary judgment (Doc. 20) be denied; and

3. This matter be remanded for further proceedings.

DATED: May 2, 2018

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE